UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 05-CV-0368 (JFB) (AKT)

———————

JOHN VACCA, ET AL.,

Plaintiffs,

VERSUS

TRINITAS HOSPITAL,

Defendant.

———————

MEMORANDUM AND ORDER
November 14, 2006

———————

JOSEPH F. BIANCO, District Judge:

Plaintiffs John Vacca, Mark Ruggiero, Dennis Perry, Alan Isaacs and Jeffrey Isaacs, (trustees on behalf of Health Fund 917) and Benefit Services of PA (third-party claims administrator of the Fund and agent for the trustees) (collectively, "plaintiffs") filed the instant action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1191, and New York State law, seeking recovery of an alleged overpayment to defendant Trinitas Hospital ("Trinitas") for medical benefits provided to a plan beneficiary.

Defendant now moves, under Federal Rule of Civil Procedure 56, for summary judgment dismissing all of plaintiffs' claims. For the reasons that follow, defendant's motion for summary judgment on the ERISA claims is granted in its entirety. Further, the Court exercises its discretion to decline jurisdiction over the remaining state claims, and thus dismisses the state claims without prejudice.

Plaintiffs move under Rule 56 for summary judgment in their favor. Plaintiffs' motion for summary judgment is denied.

## I. BACKGROUND

### A. Facts

Plaintiff Health Fund 917 ("the Fund") is a self-insured, multi-employer employee benefit plan providing medical benefits to approximately 2,000 employees located in New York and New Jersey. (Plaintiffs' Statement of Undisputed Material Facts ¶¶ 1-2.) Plaintiffs Vacca, Ruggiero, Perry, Alan Isaacs and Jeffrey Isaacs are trustees of the Fund.[1] (*Id.* ¶ 3.) Benefit Services of Pennsylvania, Inc. is the third-party claims administrator for the Fund and agent for the Trustees. (*Id.* ¶ 5.)

On May 14, 2001, a participant ("participant") in Group 4CC of the Fund's healthcare plan was admitted to the emergency room of Trinitas Hospital's facility on East Jersey Street in Elizabeth, New Jersey. (*Id.* ¶ 16; Defendant Trinitas Hospital's Response to Plaintiff's Statement of Undisputed Material Facts ¶ 16.)

All medical benefits to be provided to the participant were to be pre-approved by the "CareReview" division of the Fund. (*Id.* ¶ 11.) Psychiatric benefits for participant were to be pre-approved by the "Teamsters Center Services" ("TCS") division of the Fund. (*Id.* ¶ 12.) On May 22, 2001, Trinitas Hospital ("Trinitas") contacted "CareReview" to obtain pre-certification for medical services that were being provided to participant; the request was denied. (*Id.* ¶ 25.) Trinitas then contacted TCS to obtain pre-certification for psychiatric services that were being provided to participant. (*Id.* ¶ 26.) TCS approved in-patient psychiatric treatment for participant under the plan at a daily rate of $550, for a maximum of 30 days. (*Id.*) The participant remained hospitalized at Trinitas for 30 days and was discharged on June 13, 2001. (*Id.* ¶ 29-30.) The total charge approved by TCS for his stay was $16,500. (*Id.* ¶ 27.)

On June 29, 2001, Trinitas billed the Fund $68,553.51 for medical services that had been provided to participant. (*Id.* ¶ 31.) On August 2, 2001, plaintiffs re-priced the amount due as if Trinitas were an in-network provider. (*Id.* ¶ 32.) Benefit Services, the Fund's third-party claims administrator, paid $55,290.13 to Trinitas, a difference of $38,790.13 more than the pre-approved charge of $16,500 for participant's psychiatric services. (*Id.* ¶ 33.) Upon discovering the overpayment, both the Fund trustees and the Fund third-party claims administrator contacted Trinitas in an attempt to recover the $38,790.13 paid in error. (*Id.* ¶ 34-35.) Trinitas refused to return the funds. (*Id.* ¶ 35.)

### B. Procedural History

On January 24, 2005, plaintiffs commenced the instant action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Plaintiffs also allege pendent state claims for breach of contract and unjust enrichment.

On September 12, 2006, defendant moved to dismiss this action for lack of subject-matter jurisdiction, pursuant to Federal Rules of Civil Procedure 12(h) and 12(b)(1). Defendant asserted that plaintiffs' claims for money damages were not cognizable under ERISA Section 502(a)(3), and therefore did not arise under federal law, vitiating any federal question upon which this Court could claim subject-matter jurisdiction.

---

[1] Plaintiff Alan Isaacs passed away subsequent to the commencement of this lawsuit. (Plaintiffs' Statement of Undisputed Material Facts ¶ 4.)

2

Plaintiffs cross-moved for summary judgment on the same date. Following oral argument on October 27, 2006, this Court permitted defendant to convert the motion to dismiss for lack of subject matter jurisdiction to a cross-motion for summary judgment under Fed. R. Civ. P. 56, without objection by plaintiffs. On October 31, 2006, defendant Trinitas cross-moved for summary judgment against plaintiffs, incorporating the arguments made in their prior pleadings.[2]

---

[2] The Second Circuit has acknowledged that "if a federal statute upon which a claim is premised is interpreted to be inapplicable, it could be argued that the plaintiff has failed to present a federal question and thus subject matter jurisdiction is absent. However, the courts have uniformly held that in such instances the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to [Rule 12b(6)] or Rule 56." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996) (citing 2A James W. Moore et al., *Moore's Federal Practice*, ¶ 12.07[2.-1], at 12-60 (2d ed. 1995)). Moreover, the Second Circuit has taken the view that in determining whether subject matter jurisdiction exists, the court should simply look to whether the complaint –on its face– seeks recovery under federal law or the Constitution. *Id.* at 1189. If such a claim is made, then the court must assume sufficient basis for jurisdiction and "reserve further scrutiny for an inquiry on the merits." *Id.; Carlson v. Principal Fin. Group*, 320 F.3d 301 (2d Cir. 2003) (denying motion to dismiss under 12(b)(1) for failure to state a valid claim under ERISA: "the question of whether a federal statute supplies a basis for subject matter jurisdiction is separate from, and should be answered prior to, the question of whether the plaintiff can state a claim for relief under that statute.").

On its face, the Fund's complaint alleges federal question jurisdiction on the ground that their claim for recovery of an overpayment of benefits arose under federal law, namely ERISA: "[p]laintiffs bring this action against Trinitas under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., to recover an overpayment of benefits paid to Trinitas." (Compl.¶ 1.) Plaintiffs claim jurisdiction and venue in this Court pursuant to ERISA, 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1132(e)(2). Plaintiffs also assert that the Fund is an employee benefit plan within the meaning of ERISA. (Compl. ¶ 4.) In this case, federal jurisdiction and the merits of plaintiffs' claims turn on the same question - whether ERISA permits recovery of the overpayment as a form of "equitable relief." *See, e.g., Nowak*, 81 F.3d at 1190 (holding that where federal jurisdiction and merits of plaintiffs claim were contingent upon the same question, the district court should have exercised jurisdiction and conducted a "substantial inquiry into the statute's applicability" pursuant to Fed. R. Civ. P. 12(b)(6).) To comply with the Second Circuit's guidance that in cases where a federal claim is inapplicable, a motion should be brought under Rule 12(b)(6) or Rule 56, rather than as a motion for lack of subject-matter jurisdiction, the Court allowed defendant Trinitas, with permission of plaintiffs, to re-file its motion for lack of subject-matter jurisdiction as a cross-motion for summary judgment.

## II. SUMMARY JUDGMENT

Defendants in the instant case move for summary judgment against plaintiffs pursuant to Fed. Rule Civ. P. 56, arguing that plaintiffs have no basis for an ERISA claim under Section 502(a)(3) because the statute only provides for equitable remedies and does not permit recovery of the alleged overpayment.

### A. STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

### B. AVAILABILITY OF RELIEF UNDER SECTION 502(a)(3)

Under Section 502(a)(3) of the ERISA statute, a civil action may be brought by a plan participant, beneficiary or fiduciary: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (2006). Plaintiffs argue that this clause of ERISA permits them to recover the alleged overpayment made by the Fund to Trinitas. In this case, the question is whether the remedy sought by plaintiffs falls within the "appropriate equitable relief" authorized by the statute. The complaint demands repayment of the $38,790.13 allegedly overpaid to Trinitas, plus interest, attorneys' fees, and litigation costs.

Money awards under Section 502(a)(3) are only rarely permitted, and generally are given in circumstances that are not applicable here. The Second Circuit has held that compensatory and punitive damages are "*never included* within 'other appropriate equitable relief.'" *Gerosa v. Savasta & Co.,*

*Inc.*, 329 F.3d 317, 321 (2d Cir. 2003) (emphasis added) (citing *Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993)). Citing the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the Second Circuit cautioned against suits "purporting to seek equitable relief while also seeking monetary damages":

> "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Bowen v. Massachussetts*, 487 U.S. 879, 918-919, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988) (Scalia, J., dissenting). And "money damages are, of course, the classic form of legal relief." *Mertens v. Hewitt Associates*, 508 U.S. 248, 255, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993).

*Frommert, v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006).

In *Gerosa,* where trustees of an ERISA plan sued its actuarial firm for negligence, the Second Circuit reiterated that in the case of non-fiduciary defendants, the "'*only* conceivable equitable claim' for cash money lies under the antique equitable remedy of restitution." 329 F.3d at 321. In determining whether a claim for restitution may stand under Section 502(a)(3) of ERISA, the Supreme Court noted that "not all relief falling under the rubric of restitution is available in equity." *Knudson*, 534 U.S. at 212. Under *Knudson*, the determination of whether restitution is legal or equitable depends upon the basis for the claim and the nature of the remedies sought by the plaintiffs. *Id.* at 213 (internal citation omitted). The Supreme Court distinguished equitable restitution "in the form of a constructive trust or an equitable lien" on money or property belonging to the plaintiff that could be clearly traced to particular funds or property in the defendant's possession, from legal restitution in cases "in which the plaintiff 'could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.'" *Id.*

Plaintiffs argue that because they can identify the specific checks that were paid to defendants, as well as the bank accounts into which the checks were deposited, the overpayment to Trinitas can be traced with enough particularity to establish an equitable lien over the funds. However, plaintiff's interpretation of equitable restitution would encompass nearly every payment between two parties in which the source and destination of the funds paid could be identified. Plaintiff's approach was rejected by the Second Circuit in *Nechis v. Oxford Health Plans, Inc.*, where the court held that no claim in equity could be established where the defendant was not required to segregate the monies upon which plaintiff sought to impose a trust, and where there was no allegation that the funds were kept in a separate account. 421 F.3d 96, 103 (2d Cir. 2005). Similarly, there is no indication or argument that the alleged overpayment in this case was retained separately from defendant's other funds. Although plaintiffs have framed their claim for restitution as an equitable one, "the gravamen of this action remains a claim for money compensation and that, above all else, dictates the relief available." *Frommert*, 433

F.3d at 270; *see Gerosa*, 329 F.3d at 321 ("In determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label.").

C. UNJUST ENRICHMENT

Plaintiffs also assert that they are entitled to recovery pursuant to federal common law because Trinitas has been "unjustly enriched" by the accidental overpayment. However, within the Second Circuit, "courts cannot turn to Federal common law to fill gaps in ERISA's civil remedy provisions." *Blanck v. Consolidated Edison Retirement Plan*, No. 02 Civ. 7718 (LTS) (DCF), 2006 U.S. Dist. LEXIS 2460, *4 (S.D.N.Y. Jan. 24, 2006); *Gerosa*, 329 F.3d at 323, n.6 ("Nor do we mean to say that common-law principles are never relevant to questions involving remedies. We hold only that the limited text of ERISA's civil remedies is inconsistent with judicial discovery of new liabilitites.") (internal citations omitted). As plaintiff's relief is limited to the civil remedies provided by ERISA, rather than a broader notion of "federal common law," restitution for unjust enrichment must fall within the parameters of "appropriate equitable relief" as set forth in Section 502(a)(3) and defined in *Knudson*. *See Mead v. Arthur Andersen, LLP,* 309 F. Supp. 2d 596, 599 (S.D.N.Y. 2004) ("The fact that [plaintiff's] claim is framed as an unjust enrichment (versus breach of contract) does not affect the *Knudson* analysis, which focuses on 'nature of the relief sought,' not the theory supporting that relief.").

Plaintiff is unable to identify any cases in this Circuit in which equitable restitution was awarded to an ERISA plan fiduciary for a disputed overpayment to a health care provider. The few existing examples of Second Circuit courts finding "unjust enrichment" claims to be valid under ERISA Section 502(a)(3) involve fact patterns in which a plan fiduciary seeks repayment from a beneficiary who has improperly received a windfall in violation of the plan's terms. *See Unum Life Ins. v. Lynch*, No. 04 Civ. 9007 (CLB), 2006 U.S. Dist. LEXIS 7160 (S.D.N.Y. Jan. 31, 2006) (finding valid claim for unjust enrichment where fiduciary sought reimbursement of disability benefits pursuant to a repayment provision in its policy from a beneficiary who had also received federal Social Security disability payments); *Blanck*, No. 02 Civ. 7718, 2006 U.S. Dist. LEXIS 2460, at *6 ("[T]here is no dispute that [the beneficiary] wrongfully received additional payments from the Plan as a result of clerical errors; it would thus appear that a fiduciary would have a cause of action for restitution on the Plan's behalf."). Although plaintiffs have framed their claim as one of "unjust enrichment," they have failed to distinguish it from an ordinary collection action; in the absence of any indication that equitable restitution would be an appropriate remedy, recovery for such a claim is not permissible under Section 502(a)(3).

*Sereboff v. Mid Atlantic Medical Svcs., Inc.*, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006), cited by the plaintiffs, is inapposite. In *Sereboff*, the beneficiaries of an ERISA plan received medical benefits following a car accident, then initiated a tort suit against several third parties. *Id.* Pursuant to a subrogation clause in the plan agreement, the plan fiduciary asserted a lien on the anticipated proceeds from the suit, for the medical expenses that the plan had paid on the beneficiaries' behalf. *Id.*

The Supreme Court held that the plaintiffs could recover money damages because the plan fiduciary "sought its recovery through a

6

constructive trust or equitable lien on a specifically identified fund, not from the [plaintiffs'] assets generally." *Sereboff*, 126 S. Ct. at 1874. Because the plaintiffs in *Sereboff* had asserted a lien on the anticipated tort award before it was even acquired, the Court found that the plan fiduciary was a "trustee" of the funds and had established an equitable lien pursuant to the reimbursement provision contained in the ERISA plan. *Id.* at 1876-77 (holding that the action to enforce the reimbursement provision "qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement"). This Court finds plaintiffs' citation of *Sereboff* to be unavailing, as no such lien or specific identification of funds or property is present here. Thus plaintiffs' claims under Section 502(a)(3) of ERISA are dismissed.

### III. STATE CLAIMS

Having dismissed plaintiffs' federal claims pursuant to 29 U.S.C. 1132(a)(3), this court declines to exercise supplemental jurisdiction over the state claims alleged. 28 U.S.C. 1167(c)(3). The claims are dismissed in their entirety. This court may, in its discretion, "decline to exercise supplemental jurisdiction over state law claims once it has dismissed all claims over which it has original jurisdiction." *Kolari v. New York Presbyterian Hospital*, 455 F.3d 118, 121-22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)) (internal quotation marks omitted) ("If the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."); *Karmel v. Liz Claiborne, Inc.*, No. 99-3608, 2002 U.S. Dist. LEXIS 12842, *11 (S.D.N.Y. Jul. 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

### IV. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted as to plaintiffs' ERISA claims. Further, the Court declines to exercise jurisdiction over the remaining state claims. The state claims are dismissed without prejudice. Plaintiff's cross-motion for summary judgment is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 14, 2006
Central Islip, NY

\*\*\*

Plaintiffs are represented by Daniel T. Campbell and Gene M.J. Szuflita, of Belson Campbell & Szuflita, 11 Park Place, 10th Floor, New York, New York 10007, as well as by Jane Blair Jacobs, Joan E. Rothermel, Laurence Jay Lebowitz and Khristan Anne Heagle, Esqs., of Klein, Zelman Rothermel & Dichter LLP, 485 Madison Avenue, New York, New York 10022. Defendants are represented by Philip C. Chronakis and Lauren Levine, Esqs., of Garfunkel, Wild & Travis PC, 111 Great Neck Road, Great Neck, NY 11021.